AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Western District of New York

| | | |
|---|---|---|
| United States of America<br>v.<br>PHILIP DIGENNARO<br><br><br><br><br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 26-MJ-550 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___1/1/2021 and 5/21/2026___ in the county of ___Monroe___ in the ___Western___ District of ___NY, and elsewhere___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 371, 1028(a)(2) and (b)(1) (B), 1028A, 1343 and 1349, and 1956(a)(1)(B)(i) and 1957 | Conspiracy, Transfer of More than Five False Identification Documents, Aggravated Identity Theft, Wire Fraud and Conspiracy to Commit Wire Fraud, and Money Laundering |

This criminal complaint is based on these facts:

See the Affidavit of Stephen J. Csapo, Special Agent ("SA"), Federal Bureau of Investigation ("FBI"), which is incorporated by reference herein

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Stephen J. Csapo, SA, FBI
*Printed name and title*

submitted electronically in .pdf format. Oath administered, and contents and signature attested to me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3).

Date:  June 4, 2026

_____
*Judge's signature*

City and state:          Rochester, New York

Hon. Mark W. Pedersen, US Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

STATE OF NEW YORK    )
COUNTY OF MONROE    )        SS:
CITY OF ROCHESTER    )

I, Stephen J. Csapo, Special Agent of the Federal Bureau of Investigation, being duly sworn, depose and state that:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the United States Department of Justice, Federal Bureau of Investigation ("FBI"), and have been so employed since September of 2015. I am currently assigned to the Buffalo, New York Field Office. My experience as an FBI Special Agent has included the investigation of cases involving corporate fraud, investment fraud, health care fraud, bank fraud, identity theft, money laundering, public corruption, cases involving computer intrusions and cases involving the use of computers to commit crimes. I have received training and have gained experience in interview and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, computer evidence identification, computer evidence seizure and processing, and various other criminal laws and procedures.

2.      I make this affidavit in support of a criminal complaint charging Philip Digennaro ("DIGENNARO") with violating Title 18, United States Code, Section 371 (Conspiracy), Title 18, United States Code, Section 1028(a)(2) and (b)(1)(B) (Transfer of More than Five False Identification Documents), Title 18, United States Code, Section 1028A (Aggravated Identity Theft), Title 18, United States Code, Section 1343 and 1349 (Wire Fraud

and Conspiracy to Commit Wire Fraud), and Title 18, United States Code, 1956(a)(1)(B)(i) and 1957 (Money Laundering) (hereinafter, collectively the "TARGET OFFENSES").

3.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.

4.    This affidavit is intended to show only that there is sufficient probable cause to believe that DIGENNARO committed the TARGET OFFENSES and does not set forth all of my knowledge about this matter.

5.    Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part, and any dates, dollar amounts, and times referenced in this affidavit are "on or about" that date, amount, or time, and are approximate.

## PROBABLE CAUSE

### *Background Regarding Class Action Lawsuits*

6.    By way of background, a class action lawsuit is a legal claim filed by one or more individuals (the "class representatives") on behalf of a larger group of people (the "class") who have suffered similar harm from the same defendant or group of defendants.

7.    Class action lawsuits are often resolved by a settlement agreement between the class representative and the defendant.

8.    Generally, when the parties reach a settlement, the defendant pays a lump sum settlement (sometimes millions of dollars) to a claim administrator or other third party.

2

9.    Then, in larger class action lawsuits, any individual can apply *via* an online form to be a member of the class and receive reimbursement from the settlement fund.  These online claim forms require the applicant to assert, under penalty of perjury, that the applicant is a member of the class because the applicant was impacted by the defendant(s)'s wrongful conduct in a particular manner.

10.    Once these claims are submitted, the claim administrator distributes the settlement funds.  In large class action lawsuits, this can involve thousands of claimants.

11.    However, in large class action lawsuits, it is not uncommon that some individuals who are members of the "class" never file a claim and therefore never receive their portion of the settlement fund.  Thus, there can be money left over in the settlement fund.

12.    The court overseeing the class action lawsuit will direct the claims administrator's disposition of the leftover settlement funds.  Often, courts direct claims administrators to donate leftover funds to charity.

### *Investigation of Digennaro for Filing False Claims in Class Action Lawsuits*

13.    DIGENNARO has filed false claims in multiple class action lawsuits in order to obtain payments from settlement funds that he was not otherwise entitled to receive.

14.    DIGENNARO used over 480 bank accounts at eight different financial institutions to perpetuate this scheme.

15.    Law enforcement analyzed these bank accounts and determined that, between in or around January 2022 and in or around December 2025, DIGENNARO received

3

approximately 27,052 payments totaling approximately $1,303,060.59 from approximately 107 different class action lawsuit settlements.   DIGENNARO has continued until in or around April 2026 to transfer funds derived from the class action lawsuits between various accounts in his control.

*Vimeo/Magisto Biometric Privacy Class Action Lawsuit*

16.     One example involves the settlement in the class action lawsuit *Acaley v. Vimeo, Inc.*, which was litigated in Cook County, Illinois, Case No. 2019CH10873 (hereinafter the "Vimeo/Magisto Biometric Privacy Class Action Lawsuit").

17.     In the Vimeo/Magisto Biometric Privacy Class Action Lawsuit, the defendant, Vimeo, operated a video streaming platform, Magisto.  The plaintiffs alleged that Vimeo unlawfully collected biometric information from photos and videos that users uploaded to Magisto, without the users' knowledge or consent, in violation of the Illinois Biometric Information Act.

18.     The class members of the Vimeo/Magisto Biometric Privacy Class Action Lawsuit were Illinois residents who appeared in a photo or video on the Magisto app and whose faces were detected between September 20, 2014, and January 20, 2023.

19.     Vimeo settled the lawsuit by making a $2.25 Million payment to the Vimeo/Magisto Biometric Privacy Class Action Lawsuit settlement fund.  Pursuant to a Court Order, dated January 9, 2023, once the settlement was fully distributed to class members who filed claims, the remaining funds were to be donated to the American Civil Liberties Union of Illinois.

4

20.    DIGENNARO has only ever resided in New York and California.  As such, he was not a member of the Vimeo/Magisto Biometric Privacy class and was not entitled to any payments from the settlement fund.

21.    Nonetheless, law enforcement's analysis of DIGENNARO's bank records revealed that he received approximately 437 claim payments totaling approximately $43,086.02 from the Vimeo/Magisto Biometric Privacy Class Action Lawsuit settlement fund.

22.    Specifically, on or about October 20, 2023, DIGENNARO received 287 payments of exactly $147.46 from the Vimeo/Magisto Biometric Privacy Class Action Lawsuit settlement fund.  On or about September 9, 2024, DIGENARRO received another 150 payments of exactly $5.10 from the Vimeo/Magisto Biometric Privacy Class Action Lawsuit settlement fund.

23.    The 437 claim payouts were deposited into 227 unique bank accounts at five different banks. All the bank accounts were in the name of DIGENNARO.

### Chrysler-Dodge-Jeep Ecodiesel Class Action Lawsuit

24.    Another example is the *In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices and Products Liability Litigation*, which was litigated in the United States District Court for the Northern District of California, Case No. 17-MD-2777 (hereinafter the "Ecodiesel Class Action Lawsuit").

25.     In the Ecodiesel Class Action Lawsuit, the class representatives alleged that the Ram 1500 EcoDiesel, Model Years 2014 – 2016, and the Jeep Grand Cherokee EcoDiesel,

model years 2014 – 2016, did not comply with federal and state emissions regulations and that Fiat Chrysler made misrepresentations to consumers regarding the vehicles.

26.     The defendants settled the Ecodiesel Class Action Lawsuit by making cash payments to class members ranging from $990 to $3,075.

27.     In order to receive payment, class members were required to submit a claim form either electronically or by mail.  Class members also needed to provide proof that they owned one of the vehicles at issue in the call action lawsuit, such as vehicle title, registration, insurance, and driver's license.

28.     Law enforcement's analysis of DIGENNARO's bank records revealed that, between on or about January 25, 2022, and on or about May 19, 2023, DIGENNARO received nine payments totaling $27,060 from the Ecodiesel Class Action Lawsuit settlement fund.

29.     By way of example, according to records obtained from Fiat, on or about January 29, 2021, a claim was submitted through the Ecodiesel Class Action Lawsuit's online claims forms submission portal.  The claim was in the name of "K.T." and related to a "2014 JEEP GRAND CHEROKEE LIMITED 4X4 3.0L EcoDiesel vehicle (VIN 1C4RJFBM3EC496456)."

30.     The claimant "K.T." used the email address tkarla595@gmail.com.  According to records obtained from Google, the email account tkarla595@gmail.com has a recovery address of phildigennaro1@me.com.  According to records obtained from Apple, the email

6

address phildigennaro1@me.com is subscribed to DIGENNARO at DIGENNARO's residence.

31.     On or about April 18, 2021, and April 22, 2021, the claimant "K.T." using email address tkarla595@gmail.com submitted a driver's license[1] and vehicle registration to the claims administrator as proof of ownership.  Both documents contained California addresses, as shown below:





---

[1] Records obtained from Fiat showed that DIGENNARO submitted at least five fraudulent driver's licenses like the one pictured here in support of his fraudulent claims.

32.    A review of law enforcement databases showed that in or around 2022, the vehicle with VIN 1C4RJFBM3EC496456 was actually registered in the State of Arizona.

33.    On or about February 3, 2022, the claims administrator emailed "K.T." and notified "K.T." that the claim had been approved, as follows:

> Fiat Chrysler has reviewed your settlement claim submission for your 2014 JEEP GRAND CHEROKEE LIMITED 4X4 3.0L EcoDiesel (VIN 1C4RJFBM3EC496456) and determined that you are eligible for compensation under the class action settlement. Please review the attached offer letter for further details about your benefits. You may submit your completed offer package and release by responding to this email and attaching a scan of the signed documents or by mailing the package to the address noted in the attached letter. You must return both the signed offer letter and the signed and notarized release form. Before receiving payment, you must also complete the approved emissions modification for your vehicle. **Fiat Chrysler will send your settlement check in the mail** within six weeks after we receive your signed offer package and signed and notarized release and confirmation from your dealer that your vehicle has the approved emissions modification installed. If you have any questions about your offer, please call 1-833-280-4748 for assistance or respond to this email. Thank you.

(Emphasis added.)

34.    Within one minute of receiving the claim approval email, "K.T." responded and asked, "Hi, Can you update my address to [DIGENNARO's residence]?"

35.    On or about February 18, 2022, "K.T." emailed a second request for a change of address, saying "i (sic) asked for you to change the address first so my check doesnt (sic) get sent to the wrong address."

36.    On or about February 23, 2022, the claims administrator emailed "K.T." to confirm the claimant's address was changed to DIGENNARO's residence and provided a revised offer letter with DIGENNARO's residence as the mailing address.

8

37. On or about March 5, 2022, "K.T" returned the signed offer letter. The claims administrator approved "K.T.'s" claim and, on or about May 26, 2022, mailed a check for $3,075 to DIGENNARO's residence.

38. Between on or about January 25, 2022, and on or about May 27, 2022, DIGENNARO deposited the nine checks that he received from the Ecodiesel Class Action Lawsuit into three different bank accounts.

39. DIGENNARO deposited seven checks, all in the amount of $3,075, into Chase Account X3675. DIGENNARO used Chase's remote online deposit system to deposit each of these checks.

40. According to records obtained from Chase, Account X3675 was opened on or about May 24, 2019, in the name of DIGENNARO DBA Philip M Digennaro. The mailing address for Chase Account X3675 was DIGENNARO's residence. Chase closed the account on or about February 8, 2023.

41. On or about December 16, 2022, DIGENNARO deposited an eighth check from the Ecodiesel Class Action Lawsuit settlement fund, also for $3,075, into PNC Bank Account X6735.

42. On or about May 19, 2023, DIGENNARO deposited the ninth check from the Ecodiesel Class Action Lawsuit settlement fund, in the amount of $2,460, into PNC Bank Account X6719.

43. DIGENNARO used PNC Bank's mobile deposit system to deposit both checks.

9

44.     According to records obtained from PNC Bank, Accounts X6735 and X6719 were both in DIGENNARO's name and listed DIGENNARO's residence as the mailing address.

### *Analysis of DIGENNARO's Social Media Activity*

45.     As part of the investigation, law enforcement has identified Facebook groups that openly discuss class action lawsuits.

46.     DIGENNARO made several posts regarding particular class action lawsuits in these groups.

47.     For example, on or about November 26, 2024, a member of a Facebook group titled "TCA Settlements & Payouts" posted regarding a particular class action lawsuit, *Express Freight International v. Hino Motors*.  As shown below, DIGENNARO responded to the post and asked about the timing and method of payments:



48.    Similarly, on or about December 30, 2024, another member of the Facebook group "TCA Settlements & Payouts" posted regarding a different class action lawsuit, Suboxone Antitrust Litigation, and DIGENNARO responded by asking when the settlement funds would be paid out:

11



## *Financial Analysis*

49.    During this investigation, law enforcement was able to review financial records from Synchrony Bank, Alliant Bank, Chase Bank, Key Bank, M&T Bank, PNC Bank, Discover Bank, Barclays Bank, and PayPal of bank accounts controlled by DIGENNARO.

50.    Based on the review of the financial records, law enforcement determined that between in or around January 2022 and in or around December 2025, DIGENNARO opened and used over 480 bank accounts at eight different financial institutions and PayPal in order to perpetuate this scheme.

12

51. The funds that DIGENNARO received as a result of his submission of fraudulent claims to class action settlement claims administrators were the proceeds of violations of Title 18, United States Code, Section 1343 (Wire Fraud) (hereinafter the "SUA Proceeds").

52. Based on evidence obtained during this investigation, the majority of these accounts were opened in order to spread out the voluminous class action lawsuit payouts to conceal the fact that so many claims from the same class action lawsuit were being paid to the same individual in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

53. Additionally, law enforcement's review of DIGENNARO's bank accounts has revealed that Digennaro routinely moved SUA Proceeds between accounts and ultimately consolidated SUA Proceeds into certificate of deposit ("CD") accounts and high yield savings accounts. These transactions often involved SUA Proceeds in excess of $10,000, in violation of Title 18, United States Code, Section 1957.

54. In total, beginning in or around January 2022 through and including in or around December 2025, DIGENNARO received approximately 27,052 payments, totaling approximately **$1,303,060.59 in SUA Proceeds**, which were deposited into the over 480 bank accounts in his control, from approximately 107 different class action lawsuit settlements.

55. Of that amount, DIGENNARO transferred and consolidated approximately $471,758.89 in SUA proceeds into Lending Club Account X8586 and approximately $731,735.83 in SUA proceeds into Barclays Account No. X9491.

13

*Seizure of the SUA Proceeds*

56.     On or about May 21, 2026, law enforcement executed a federal seizure warrant and seized a total of approximately **$1,224,497.27** from DIGENNARO's Lending Club Account X8586 and Barclays Bank Account X9491, on the grounds that those funds were SUA Proceeds and/or proceeds involved in money laundering.

*Search of DIGENNARO's residence*

57.     On or about May 21, 2026, law enforcement executed a federal search warrant at DIGENNARO's residence in Rochester, New York.

58.     During the search, law enforcement found multiple checks that were issued from class action settlement funds and were payable to individuals other than DIGENNARO.

59.     For example, law enforcement found three checks from "Porsche Gasoline Qualified Settlement Fund" to three separate individuals[2] totaling $761.92, as shown below:

---

[2] Law enforcement is still in the process of determining whether these names belong to real people or are fake.

14



60.     These individuals' names appeared in at least ten other class action settlement payouts that were deposited into DIGENNARO's bank accounts.

61.     Similarly, law enforcement found three checks from "EpiPen Antitrust Settlement Fund" to three other individuals[3] totaling $1,718.36, as shown below:

---

[3] Law enforcement is still in the process of determining whether these names belong to real people or are fake.

15





62.    During the search warrant, law enforcement also seized and searched numerous electronic devices and found voluminous records of class action lawsuit filings, photoshopped documents with fake names, and a folder labeled "ready for claims" with subfolders for various class action lawsuits.

16

*Interview of DIGENNARO*

63.    During the execution of the search warrant, DIGENNARO initially told agents that he did not want to speak with them.

64.    A few hours into the search, DIGENNARO asked the agents to speak with him in the driveway of the residence, away from his family. The agents reiterated to DIGENNARO that speaking with them was voluntary.  DIGENNARO acknowledged that and stated he wanted to speak.

65.    DIGENNARO subsequently told agents the following:

66.    DIGENNARO admitted that he used fictitious names to make claims in several hundred class action lawsuits. DIGENNARO stated he came up with the idea all by himself. DIGENNARO stated he started doing this in or around 2021 after being unemployed due to Covid-19 and following the loss of cryptocurrency.

67.    DIGENNARO stated he identified ongoing class action lawsuits by viewing websites such as TopClassActions.com. DIGENNARO stated he would then use a fake name generator on his computer and in some instances obtain fake identifications on the dark web. DIGENNARO stated he would then take this information and pass it on to a third-party in Columbia, who would file the fraudulent claims using a Proxy. DIGENNARO stated he paid the third party $600 per month.

68.    DIGENNARO stated for addresses he could use a fake name at any valid address and then have US Postal do mail forwarding from that address to his personal address for the fabricated name.

17

69.    DIGENNARO stated that, over the past year, he received a lot of denials on the claim submissions.

70.    DIGENNARO was shown copies of three California Driver's licenses that were submitted with claims in a class action lawsuit.  DIGENNARO admitted that he obtained those documents on the dark web.

**71.**    DIGENNARO was shown copies of a New York State Vehicle Title and New York State Registration document that were submitted with a claim in another class action lawsuit.  DIGENNARO admitted that he used his grandfather's real name on the documents, but that the documents were fake.  DIGENNARO obtained the documents on the dark web and inputted the information needed for the class action claim.

18

## CONCLUSION

72.    Based on the foregoing, I respectfully submit that there is probable cause to believe that DIGENNARO committed the TARGET OFFENSES.

Stephen J. Csapo
Special Agent
Federal Bureau of Investigation

Affidavit submitted electronically by email in .pdf format. Oath administered and contents and signature attested to me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 4th day of June 2026.

HON. MARK W. PEDERSEN
UNITED STATES MAGISTRATE JUDGE

19